IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROQUE DE LA FUENTE,
*Plaintiff*,

v.

LINDA LAMONE, *et al*.,
*Defendants*.

Civil Action No. ELH-16-2743

**MEMORANDUM**

Roque ("Rocky") De La Fuente, the pro se plaintiff, was an unaffiliated candidate for President of the United States in 2016. ECF 1, ¶ 4. De La Fuente filed suit on August 2, 2016, against Linda Lamone, in her capacity as Administrator of the State Board of Elections ("Board"), and twenty unnamed defendants, pursuant to 42 U.S.C. § 1983. *See* ECF 1. He claims that he was subjected to an unconstitutional burden to gain placement on the ballot in Maryland. *Id.*

In particular, De La Fuente claims that on Friday, July 29, 2016, in connection with the settlement of another federal case, to which plaintiff was not a party, the Board agreed to reduce "the statewide independent petition requirement in 2016", so as to expand "the ability for a voter in Maryland to vote for the candidate more representative of their choice." ECF 1 at 1. However, he complains that he could not benefit from the change because, under Md. Code (2017 Repl. Vol.), § 5-703(f)(1) of the Election Law Article ("E.L."), the deadline for an unaffiliated candidate to submit the requisite signatures was "a mere 1 business day after the"

settlement agreement. *Id*.[1] In his view, "the deadline place[d] an extraordinary if not impossible burden to gather the signatures required by this deadline." *Id.*

In his suit, De La Fuente seeks, *inter alia*, a declaration that Maryland's "statutory scheme unconstitutionally infringes upon the Plaintiff's right to ballot access and to participate in the electoral process." *Id.* at 5. Moreover, he sought an Order placing him on the 2016 presidential ballot in Maryland, as well as a declaration extending the deadline for the submission of signatures by twenty or more days. *Id.*[2] But, plaintiff concedes that most of his requests are now moot, except for a declaration that E.L. § 5-703 "unconstitutionally infringes" on his "right to ballot access" and unduly burdens other unqualified presidential candidates. ECF 12 at 3-4.

The docket does not reflect service on Lamone or anyone else. *See* docket. Nevertheless, on October 11, 2016, defendants moved to dismiss (ECF 4), supported by a memorandum of law. ECF 4-1 (collectively, "Motion"). De La Fuente sought an extension of time in which to respond (ECF 6), which I granted. ECF 7. He filed his opposition on January 23, 2017, well after the November 2016 presidential election. ECF 12 ("Opposition"). Defendants replied. ECF 13 ("Reply").

In their submissions, defendants argue, *inter alia*, that the case should be dismissed under Fed. R. Civ. P. 12(b)(1), because plaintiff has not demonstrated that he has Article III standing and because the case is now moot. *See* ECF 4-1; ECF 13. Defendants also argue that dismissal

---

[1] De La Fuente stated that the petition deadline was August 2, 2016. ECF 1, ¶ 16. However, the petition deadline is the first Monday in August, and in 2016 it fell on August 1, 2016. This discrepancy is not material to the issues.

[2] De La Fuente stated several times that he desired to "have his name put on the 2016 Presidential ballot in Arizona . . . ." ECF 1, ¶ 4; *see also* ECF 1 at 5. Presumably, he meant Maryland, not Arizona. *See id.* ¶ 12 ("Plaintiff . . . seeks to be placed on the ballot in Maryland . . . .").

is appropriate under Fed. R. Civ. P. 12(b)(6) because, in their view, plaintiff has failed to state a claim upon which relief can be granted. *See* ECF 4-1. De La Fuente counters that he has Article III standing and contends that some of the relief sought in the Complaint is not moot. ECF 12.

The Motion is fully briefed. No hearing is necessary to resolve it. *See* Local Rule 105.6.

The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). I have done so. Nevertheless, for the reasons that follow, I shall grant the Motion.

### I. Background

The Maryland Code provides that a candidate for public office who is not affiliated with any political party may be nominated for office by petition. E.L. § 5-703(b). Section 5-703(e) is titled "Petition signatures requirements." E.L. § 5-703(e)(1) provides:

> A candidate who seeks nomination by petition may not have the candidate's name placed on the general election ballot unless the candidate files with the appropriate board petitions signed by not less than 1% of the total number of registered voters who are eligible to vote for the office for which the nomination by petition is sought, except that the petitions shall be signed by at least 250 registered voters who are eligible to vote for the office.

Section 5-703(e)(3) states: "The number of registered voters required to satisfy the requirements of paragraph (1) of this subsection shall be determined as of January 1 of the year of the primary election for which the nomination is sought." One percent of the total number of eligible voters in the State as of January of 2016 was approximately 38,000 people. *See* MARYLAND STATE BD. OF ELECTIONS, VOTER REGISTRATION ACTIVITY, *January, 2016*, *available at*: https://go.usa.gov/x5M9v (providing that there were a total of 3,768,669 active registered voters as of January 2016).

E.L. §5-703(f) is also relevant. It provides, *id.*: "[A] petition that contains the required number of signatures specified under subsection (e)(1) of this section shall be filed with the appropriate board by 5 p.m. on the first Monday in August in the year in which the general election is held." August 1, 2016 was the first Monday in August 2016.[3]

Pertinent to the case *sub judice*, on July 24, 2015, Greg Dorsey, an unaffiliated candidate for United States Senate in the 2016 general election, filed suit in this Court against, *inter alia*, Lamone, challenging the requirement that unaffiliated candidates must obtain signatures from 1% of eligible voters in the state. *Dorsey v. Lamone, et al.*, GLR-15-2170 (D. Md.), ECF 1.[4] As noted, for 2016, the 1% provision would have required an unaffiliated candidate to gather about 38,000 signatures. *See also* ECF 12 at 3. Dorsey claimed that the requirement that unaffiliated candidates obtain approximately 38,000 signatures to gain ballot access under E.L. § 5-703 was unconstitutional, given that a candidate intending to run for political office as a representative of

---

[3] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, judicial notice of adjudicative facts is appropriate only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Moreover, it is well settled that a district court may "properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990); Fed. R. Evid. 201. Courts may also take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment.").

[4] In view of the procedural posture of the case, the Court accepts as true the allegations in the Complaint. ECF 1.

a new political party could gain access to the ballot with only 10,000 signatures, in accordance with E.L. §§ 4-102(b)(2)(i) and 5-703.1.  GLR-15-2170, ECF 1 at 2.

On June 10, 2016, Judge Russell denied defendants' motion to dismiss, observing that Dorsey had stated "a plausible claim that Maryland's ballot access requirements for unaffiliated candidates are unconstitutional."  *Id.*, ECF 13.  Thereafter, on July 29, 2016, the Friday before the August 1, 2016 deadline, the parties in *Dorsey* executed a settlement agreement.  *Id.*, ECF 20.  It provided, in pertinent part, *id.*, ECF 20-1 at 2:

> E. For the 2016 General election and for any special general election that may hereafter be scheduled to be held prior to the end of the 2017 legislative session of the Maryland General Assembly, the Board will accept as sufficient for purposes of Elec. Law § 5-703(e) a candidate nominating petition for statewide office containing the signatures of at least 10,000 registered voters and that, provided all other requirements are satisfied, the candidate shall be placed on the general election ballot.

Section F of the settlement agreement provided that the Board would recommend to the General Assembly and to the Governor the passage of a bill during the 2017 legislative session eliminating the disparity in the signature requirements between unaffiliated candidates and new political party candidates.  *Id.*  The settlement agreement, however, did not change the date for unaffiliated candidates to submit their petitions.  ECF 1, ¶ 16.

During the 2017 legislative session, at the request of the Board, the General Assembly unanimously passed legislation addressing the disparity in the signature requirements for unaffiliated candidates and new political parties.  *See* H.B. 529, 2017 Reg. Session (Md. 2017) ("H.B. 529").[5]  Among other things, H.B. 529 amends E.L. § 5-703(e)(1), as follows:

---

[5] Although HB 529 had been introduced by the time defendants filed their Reply on February 6, 2017 (ECF 13), it was not passed by both chambers of the General Assembly until April 3, 2017.  Defendants did not reference HB 529 in their submissions.  *See* ECF 4-1; ECF 13.

(e) (1) A candidate who seeks nomination by petition may not have the candidate's name placed on the general election ballot unless the candidate files with the appropriate board petitions signed by ~~not less than~~ **THE LESSER OF 10,000 REGISTERED VOTERS OR 1%** of the total number of registered voters who are eligible to vote for the office for which the nomination by petition is sought, except that the petitions shall be signed by at least 250 registered voters who are eligible to vote for the office.[6]

On May 26, 2017, Governor Lawrence J. Hogan announced that, pursuant to Art. II § 17(c) of the Maryland Constitution, he would permit H.B. 529 to become law without his signature. Letter from Lawrence J. Hogan, Governor of Maryland, to Michael E. Busch, Speaker of the Maryland House of Delegates (May 26, 2017), *available at*: http://bit.ly/2rpFjUo. HB 529 will take effect on October 1, 2017. *See* H.B. 529 at 8.

On August 2, 2016, just after the settlement was reached in *Dorsey*, and one day after the deadline for an unaffiliated candidate to file a petition under E.L. §5-703, De La Fuente filed this suit. *See* ECF 1. In his Complaint, De La Fuente claims, *id.* ¶ 19: "When the ballot access laws are changed in the middle of a petitioning period, the state must grant more time otherwise the change is meaningless." According to De La Fuente, given the short time between the July 29, 2016, settlement agreement and the petition deadline of August 1, 2016, "[m]any people who would ordinarily put forth the effort would not do so because they were unware [sic] of the settlement or there is not enough time to comply." *Id.* ¶ 20. De La Fuente also asserts, *id.* ¶ 21: "Only those who have already complied would make the deadline."

## II. Standard of Review

Defendants have brought the Motion pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). As to Rule 12(b)(1), they argue, *inter alia*, that the Complaint should be dismissed

---

[6] Lines indicate language removed from the Maryland Code and capitals indicate language added to the Maryland Code.

because the relief requested in the Complaint is moot and because plaintiff lacks standing under Article III. ECF 4-1.[7]

"Three inter-related judicial doctrines—standing, mootness, and ripeness—ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'" *Worth v. Jackson*, 451 F.3d 854, 855 (D.C. Cir. 2006) (citing U.S. Const. art. III, § 2.). Accordingly, defendants' argument that the Complaint is moot is properly considered under Rule 12(b)(1). *See, e.g.*, *Nhung Thi Tran v. Holder*, DKC-10-2503, 2011 WL 3236098, at *1 (D. Md. July 27, 2011) ("[M]ootness goes to the 'heart' of the court's Article III jurisdiction . . . ."); *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) ("As mootness creates a jurisdictional defect, respondents' motion will be treated as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1).").

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *accord Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 524. In a factual

---

[7] Based on my disposition, I need not address the standard that applies to a Rule 12(b)(6) motion.

challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Here, defendants argue, *inter alia*, that it is apparent from the face of the Complaint that the case is now moot. *See* ECF 4-1; ECF 13. This challenge is a facial challenge, given that it is made on the basis of the four corners of the Complaint.

### III. Discussion

A case becomes moot when the issues presented are "'no longer live or the parties lack a legally cognizable interest in the outcome.'" *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (other internal citations omitted); *see also Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017).

The Fourth Circuit has stated that "'mootness goes to the heart of the Article III jurisdiction of the courts.'" *Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). "'The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).

In *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), the Supreme Court said: "Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary . . . . For the federal courts to decide questions of law arising outside of cases and controversies would be inimical to the Constitution's democratic character." *See also Campbell-Ewald Co. v. Gomez*, ___ U.S. ___, 136 S. Ct. 663, 678 (2016) ("'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'") (alteration and citation omitted); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (stating that Article III standing "enforces the Constitution's case-or-controversy requirement"), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377, 1387–88 (2014).

In other words, during the pendency of a case, an actual controversy must exist. *See Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974); *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013). And, "[w]hen a case or controversy ceases to exist—either due to a change in the facts or the law—'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'" *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *S.C. Coastal Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015)); *see Chafin v. Chafin*, ___ U.S. ___, 133 S. Ct. 1017, 1023 (2013) (holding that "[f]ederal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts") (internal quotation marks and brackets omitted); *Knox v. Service Employees Int'l Union, Local 1000*, ___ U.S. ___, 132 S. Ct. 2277, 2287 (2012) (stating that "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party") (internal quotation marks omitted).

For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937); *see also Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained . . . ." *Continental Bank Corp.*, 494 U.S. at 480. When developments occur during the course of a case that prevent the court from being able to grant the requested relief, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).

To be sure, the Supreme Court has recognized a narrow exception to the mootness doctrine where a controversy is "'capable of repetition, yet evading review.'" *Kingdomware Techs., Inc. v. United States*, ___ U.S. ___, 136 S. Ct. 1969, 1976 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). The Supreme Court has explained that this exception "applies 'only in exceptional situations,' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Id.* However, as discussed below, this exception is inapplicable to the case *sub judice*.

Here, De La Fuente concedes that much of the relief that he seeks is moot. *See* ECF 12. In particular, De La Fuente states, *id.* at 3: "Plaintiff concedes that the ballot access injury he sustained in the 2016 presidential election at the hands of the Defendants can no longer be remedied by declaratory relief requiring that he be placed on the 2016 ballot." De La Fuente continues, *id.*: "Plaintiff further concedes that a TRO or preliminary injunction staying the

Defendant Secretary of State from preparing and disseminating 2016 election ballots [is] moot." Moreover, De La Fuente concedes that "any action requiring the Defendant Secretary of State to destroy any existing ballots that did not contain Mr. De La Fuente's name is also now moot." *Id.* at 3-4. And, De La Fuente asserts, *id.* at 4: "Plaintiff further concedes that a 2016 extension of the deadline to submit the newly reduced number of signatures is moot."

Thus, the only relief that De La Fuente seeks in his Complaint that he has not conceded as moot is a declaration from the Court that, among other things, E.L. § 5-703 "unconstitutionally infringes upon the Plaintiff's right to ballot access" and imposes an undue burden on unaffiliated candidates for President. ECF 1 at 5, ¶¶ A-C. However, this relief is clearly moot.

As indicated, the General Assembly passed HB 529, and the Governor allowed it to become law. It amends E.L. § 5-703 to provide parity in the signature requirements for unaffiliated candidates and candidates of new political parties. Because this change will take effect before the next general election, there is no live controversy remaining as to the current law, and the declaratory relief that De La Fuente seeks is moot. *Cf. Cutonilli v. Federal Transit Administration,* 623 Fed. App'x 616 (4th Cir. 2015) (per curiam) (concluding that case was moot because a proposed mass transit line that was the subject of the suit was cancelled by the Governor after the District Court issued its opinion).

Moreover, the Supreme Court's exception to the mootness doctrine for cases evading review is inapplicable because the issue here is not one that evades review. There is no reason to believe that De La Fuente will again be subject to the law that he challenges after the amendments in HB 529 take effect on October 1, 2017.

In sum, because the relief that De La Fuente seeks in his Complaint is now moot, the Court lacks jurisdiction to proceed under Article III. Accordingly, I shall grant the Motion under Fed. R. Civ. P. 12(b)(1).[8]

### IV. Conclusion

In view of the foregoing, I shall GRANT defendants' Motion to Dismiss (ECF 4) under Rule 12(b)(1), because the relief requested in the Complaint is now moot. Because the Court lacks jurisdiction, I shall dismiss the suit, without prejudice. *See Broadlands*, 713 F.3d at 185 ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

An Order follows, consistent with this Memorandum.

Date: June 5, 2017          /s/
                            Ellen Lipton Hollander
                            United States District Judge

---

[8] In view of my disposition, I need not reach defendants' arguments concerning standing or their claims under Rule 12(b)(6).